UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MERCEDES SMITH, SHAWN LEWIS,
JAVIER TRUJILLO, OMARIO POWELL,
DAYVON LEWIS, PATRICK BRIDGEWATER,
and MICHAEL GOODMAN,

Plaintiffs,

-against-

THE CITY OF NEW YORK,
SERGEANT EBONY HUNTLEY (TAX 930380),
POLICE OFFICER JOSHUA VALDEZ (TAX 947565),
POLICE OFFICER MICHAEL BEST (TAX 948666),
POLICE OFFICER ANDREW GELHAUS (TAX 915807),
and JOHN DOES 1-4,

Defendants.
----------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

**13 CV 7464 (AKH)**

**JURY TRIAL DEMANDED**

Plaintiffs, Mercedes Smith, Shawn Lewis, Javier Trujillo, Omario Powell, Dayvon Lewis, Patrick Bridgewater, and Michael Goodman, by their attorneys, Reibman & Weiner, hereby allege for their Complaint as follows, upon information and belief:

## PARTIES, VENUE, and JURISDICTION

1. At all times hereinafter mentioned, plaintiffs were adult residents of Bronx County, located within the City and State of New York.

2. At all relevant times hereinafter mentioned, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD") and its employees.

3. At all times hereinafter mentioned, defendant, Ebony Huntley, was a member of the NYPD, with the rank of Sergeant, employed, retained, trained and supervised by New York City, and is sued herein in her individual and official capacities.

4. At all times hereinafter mentioned, defendant Joshua Valdez was a member of the NYPD, with the rank of Police Officer, employed, retained, trained and supervised by New York City, and is sued herein in his individual and official capacities.

5. At all times hereinafter mentioned, defendant Michael Best was a member of the NYPD, with the rank of Police Officer, employed, retained, trained and supervised by New York City, and is sued herein in his individual and official capacities.

6. At all times hereinafter mentioned, defendant Andrew Gelhaus was a member of the NYPD, with the rank of Police Officer, employed, retained, trained and supervised by New York City, and is sued herein in his individual and official capacities.

7. At all times hereinafter mentioned, defendants John Does 1-4 were members of the NYPD, employed, retained, trained and supervised by New York City, and are sued herein in their individual and official capacities.

8. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

9. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Southern District of New York, where the plaintiffs and defendant City of New York reside.

## RELEVANT FACTS

10. At approximately 11:00 p.m. on December 20, 2011 (the "date of the arrest"), plaintiff, Shawn Lewis, was lawfully walking on Carpenter Avenue between 235th and 236th Streets in the County of Bronx, City and State of New York (the "scene of the arrest").

11. At this time, Mr. Lewis saw several members of the NYPD, including the individual defendants named herein, assaulting a man named Terry Buddington inside of a store (the "Carpenter Deli"), located at 4251 Carpenter Avenue, between 235th and 236th Streets, in the Bronx.

12. Upon information and belief, the police were stomping on Mr. Buddington. As a result of the assault, Mr. Buddington suffered a seizure and an ambulance was called to the scene to treat him for the injuries he sustained at the hands of the defendants.

13. Upon witnessing the assault of Mr. Buddington, plaintiff, Shawn Lewis, became alarmed and used his phone to tape the beating of Mr. Buddington by the defendants.

**Shawn Lewis**

14. Shawn Lewis was not engaged in any suspicious or illegal activity.

15. Although defendants lacked reasonable cause to seize or detain plaintiff, Shawn Lewis, much less probable cause to arrest him, and even though Mr. Lewis had not and was not engaging in any criminal conduct, the defendants seized plaintiff, Shawn

Lewis, and brought him in handcuffs to the NYPD's local precinct station house, where he was further detained and processed.

16. After detaining Mr. Lewis, the individual defendants took his cell phone and erased the recording of the incident.

17. Shawn Lewis was imprisoned at the 47th Precinct station house for several hours before he was taken to Bronx County Central Booking.

18. The individual defendants, including defendant Huntley, made several false allegations against plaintiff.

19. Specifically, defendant Huntley provided allegations in support of plaintiff's arrest report that he ""began to act violently and in a tumultuous manner causing public alarm," and that he "resisted arrest by flailing arms pushing and kicking."

20. These, and other allegations, were false, and the defendants knew they were false when they were made.

21. Pursuant to these false allegations, plaintiff was charged with Obstruction of Governmental Administration, Resisting Arrest, Inciting to Riot, and Disorderly Conduct.

22. Shawn Lewis was arraigned on a criminal complaint sworn to by the individual defendants and made on the basis of false allegations supplied by the individual defendants.

23. After several days in custody, Shawn Lewis's charges were dismissed and he was released from custody.

24. Plaintiff, Shawn Lewis, was detained, falsely arrested, imprisoned, and processed pursuant to Arrest Number B11698388, and pursuant to false allegations sworn to and/or made on the basis of false allegations supplied by defendant Ebony Huntley.

25. During the beating of Mr. Buddington, plaintiffs Dayvon Lewis, Javier Trujillo, Patrick Bridgewater, Michael Goodman and Omario Powell, all arrived separately at the scene of the arrest.

**Dayvon Lewis**

26. Plaintiff, Dayvon Lewis, was lawfully present at the scene of the arrest at about 11:00 p.m. on December 20, 2011, and was not engaged in any suspicious or illegal activity.

27. Although defendants lacked reasonable cause to seize or detain plaintiff, Dayvon Lewis, much less probable cause to arrest him, and even though Mr. Lewis had not and was not engaging in any criminal conduct, the defendants seized plaintiff Dayvon Lewis.

28. The defendants subjected Dayvon Lewis to excessive force by hitting him on the forehead with a flashlight and slamming his chin onto the concrete, causing him to sustain physical injuries including cuts and abrasions on his face.

29. Despite the absence of any evidence of wrongdoing on the part of Dayvon Lewis, the defendants formally arrested him and took him to the 47th Precinct station house where he was processed and imprisoned for several hours before he was taken to Bronx County Central Booking.

30. The individual defendants, including defendant Huntley, made several false allegations against Dayvon Lewis.

31. Specifically, defendant Huntley provided allegations in support of plaintiff's arrest report that he "was acting in a tumultuous manner without others by fighting with police and refusing to disperse."

32. Pursuant to these false allegations, plaintiff Dayvon Lewis was charged with two counts of Disorderly Conduct.

33. Dayvon Lewis was held for several more hours at Bronx County Central Booking before the Bronx County District Attorney declined to prosecute him.

34. He was then released without explanation and without being charged.

**Omario Powell**

35. Plaintiff, Omario Powell, was lawfully present at the scene of the arrest at about 11:00 p.m. on December 20, 2011, when he was approached and assaulted by the individual defendants.

36. Mr. Powell was not engaged in any suspicious or illegal activity, and did not otherwise resist arrest or engage in any violent or threatening behavior.

37. Despite the absence of any evidence of wrongdoing on the part of plaintiff, the individual defendants handcuffed Mr. Powell and formally arrested him.

38. Mr. Powell was taken from the scene of the arrest to the station house of the 47th Precinct where he was held for several hours.

39. The individual defendants, including defendant Huntley, made several

false allegations against plaintiff Omario Powell.

40. Specifically, defendant Huntley provided allegations in support of plaintiff's arrest report that he ""began to act violently and in a tumultuous manner causing public alarm," and that he "resisted arrest by flailing arms pushing and kicking."

41. These, and other allegations, were false, and the defendants knew they were false when they were made.

42. Pursuant to these false allegations, plaintiff was charged with two counts of Disorderly Conduct.

43. Mr. Powell was then transferred to Bronx County Central Booking where he was held for several more hours before the Bronx County District Attorney declined to prosecute him.

44. Mr. Powell was then released without explanation and without being charged.

45. Mr. Powell was detained, falsely arrested, imprisoned, and processed pursuant to Arrest Number B11698385, and pursuant to false allegations sworn to and/or made on the basis of false allegations supplied by defendant Ebony Huntley.

**Michael Goodman**

46. Plaintiff, Michael Goodman, was also lawfully present at the scene of the arrest at about 11:00 p.m. on December 20, 2011, when he was approached by members of the NYPD, including the individual defendants.

47. Mr. Goodman was watching the assault by the police on Mr.

Buddington and other individuals.

48. Plaintiff, Michael Goodman, was not engaged in any suspicious or illegal activity and, when the police asked him to move further back from the scene, he complied with their directives.

49. Despite the fact that he was not engaged in any suspicious or illegal activity, and despite the fact that he had complied with the defendants' directives, the individual defendants pushed, kicked, and hit Mr. Goodman on his face and body.

50. Mr. Goodman was detained and subjected to excessive force at the scene of the arrest.

51. Plaintiff Michael Goodman was not formally arrested or processed.

**Patrick Bridgewater**

52. Plaintiff, Patrick Bridgewater, was lawfully present at the scene of the arrest at about 11:00 p.m. on December 20, 2011, when he was approached and assaulted by the individual defendants, including defendant Ebony Huntley and Andrew Gelhaus.

53. The individual defendants subjected Mr. Bridgewater to excessive force, in part, by striking him on the side of his head 3-4 times, which resulted in swelling to the left side of his cheek and cuts in his face.

54. Mr. Bridgewater was not engaged in any suspicious or illegal activity, and did not otherwise resist arrest or engage in any violent or threatening behavior.

55. Despite the absence of any evidence of wrongdoing on the part of plaintiff, the individual defendants handcuffed Mr. Bridgewater and formally arrested him.

56. Mr. Bridgewater was taken from the scene of the arrest to a station house of the 47th Precinct where he was held for several hours, pursuant to several false allegations made by the individual defendants, including defendants Huntley and Gelhaus.

57. Specifically, defendant Huntley made false allegations in support of plaintiff's arrest report that Mr. Bridgewater "was acting in a tumultuous manner with others by fighting with police and refusing to disperse."

58. Pursuant to these and other false allegations, Mr. Bridgewater was charged with two counts of Disorderly Conduct.

59. While in custody, Mr. Bridgewater requested medical attention from defendant Gelhaus, but was denied treatment by him.

60. Mr. Bridgewater was then transferred to Bronx County Central Booking where he was held for several more hours before the Bronx County District Attorney declined to prosecute him.

61. Mr. Bridgewater was released from custody without explanation and without being charged.

**Javier Trujillo**

62. Plaintiff, Javier Trujillo, was lawfully present at the scene of the arrest at about 11:00 p.m. on December 20, 2011, when he was approached and assaulted by the individual defendants.

63. The individual defendants, including defendant Ebony Huntley, subjected Mr. Trujillo to excessive force, in part, by striking him on the side of his head with

her police radio.

64. The individual defendants, including defendant Michael Best, also subjected plaintiff to excessive force by pushing him and punching him in his face.

65. As a result of the excessive force perpetrated by the individual defendants, plaintiff, Javier Trujillo sustained several injuries including, but not limited to, a black eye.

66. Mr. Trujillo was not engaged in any suspicious or illegal activity, and did not otherwise resist arrest or engage in any violent or threatening behavior.

67. Despite the absence of any evidence of wrongdoing on the part of plaintiff, the individual defendants handcuffed Mr. Trujillo and formally arrested him.

68. Mr. Trujillo was taken by the defendants from the scene of the arrest to Montefiore Hospital to receive treatment for the injuries he sustained at the hands of the individual defendants, including defendant Huntley.

69. Plaintiff remained in the custody of the defendants at the hospital.

70. From the hospital, Mr. Trujillo was taken to a station house of the 47th Precinct where he was held for several hours.

71. Mr. Trujillo was detained, falsely arrested, imprisoned, and processed pursuant to Arrest Number B11698383, and pursuant to false allegations sworn to and/or made on the basis of false allegations supplied by defendant Ebony Huntley.

72. The individual defendants, including defendant Huntley, made several false allegations against plaintiff.

73. Specifically, defendant Huntley provided allegations in support of plaintiff's arrest report that he ""began to act violently and in a tumultuous manner causing public alarm," and that he "resisted arrest by flailing arms pushing and kicking."

74. These, and other allegations, were false, and the defendants knew they were false when they were made.

75. Pursuant to these false allegations, plaintiff was charged with Obstruction of Governmental Administration, Resisting Arrest, Inciting to Riot, and Disorderly Conduct.

76. Plaintiff, Javier Trujillo, was summarily released from custody at the precinct without explanation and without being charged.

77. Upon information and belief, surveillance cameras inside of the Carpenter Deli recorded at least some of the aforementioned incidents.

78. Upon information and belief, the City of New York and members of the NYPD confiscated this surveillance footage.

**Mercedes Smith**

79. Plaintiff, Mercedes Smith, went to the station house of the 47th Precinct at approximately 12:30 a.m. on December 21, 2011, to find out what had happened to Omario Powell.

80. At this time, Ms. Smith was lawfully present at this location, and was not engaged in any suspicious or illegal activity.

81. Despite the absence of any evidence of wrongdoing on the part of

plaintiff Smith, the individual defendants, including defendant Huntley, arrested her and subjected her to excessive force.

82. The individual defendants, including defendant Huntley, picked up Ms. Smith, slammed her to the ground, and told her that she was "stupid for going to the precinct."

83. Ms. Smith was detained, falsely arrested, imprisoned, and processed pursuant to Arrest Number B11698389, and on the basis of false allegation sworn to and/or made on the basis of false allegations supplied by defendant Ebony Huntley.

84. Specifically, defendant Huntley made false allegations in support of plaintiff's arrest report that "[Ms. Smith] was apprehended at the 47th Precinct where she resisted arrest by flailing arms, pushing and kicking."

85. These, and other allegations, were false and the defendants knew they were false when they were made.

86. Pursuant to these and other false allegations, Ms. Smith was charged with Obstruction of Governmental Administration in the 2d Degree, Resisting Arrest, and Inciting to Riot.

87. Ms. Smith was held at the 47th Precinct station house for several hours before she was transferred to Bronx County Central Booking, where she was held for several more hours before the Bronx County District Attorney declined to prosecute her and she was released.

88. In the cases of plaintiffs Shawn Lewis, Omario Powell, Javier Trujillo,

and Mercedes Smith, the Bronx County District Attorney declined to prosecute each of their cases due to "insufficient evidence."

89. Upon information and belief, Defendant Huntley, in support of the aforementioned arrests of Mr. Trujillo, Mr. Lewis, Mr. Powell and Ms. Smith, states that at the scene of the arrest "a crowd formed and defendants were acting in a violent matter [sic] yelling and screaming, which led [sic] to trying to place defendants under arrest."

90. These allegations, amongst others that were made by defendant Huntley in relation to this incident, were false and defendant Huntley knew them to be false when she made them.

91. Specifically, plaintiff Mercedes Smith was not at the scene of the arrest when this incident was taking place.

92. In the "Affidavit in Support of Declining/Deferring Prosecution," the Bronx County District Attorney also noted that "[t]he case was assigned to PO Valdez and when he was called to draft the case, he did not know the facts of said incident and could not articulate the facts, in order to draft an accusatory instrument."

93. None of the plaintiffs were engaged in any illegal activity, and at no time did the defendants have probable cause to seize, arrest, use force or imprison plaintiffs, nor was it reasonable for any of the defendants to believe such cause existed.

94. The aforementioned allegations were false and defendant Huntley knew them to be false when she made them.

95. The factual allegations sworn to by defendant Huntley against

plaintiffs were materially false and deliberately made to justify the illegal arrest and assault by defendants against plaintiffs.

96. At no time did there exist any basis to utilize any level of force against the plaintiffs, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

97. At no time did defendants take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in against any of the plaintiffs.

98. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

99. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

100. Plaintiffs repeat the allegations contained in the foregoing paragraphs as though stated fully herein.

101. Defendants willfully and intentionally subjected plaintiffs to excessive force, and seized, searched, arrested and imprisoned plaintiffs without due cause, and without a reasonable basis to believe such cause existed.

102. Defendants willfully and intentionally subjected plaintiffs to excessive force by, amongst other things, arresting and/or detaining them without any probable cause, and by hitting, striking and punching the plaintiffs in the manner described above, which was not necessary under the circumstances, and without a reasonable basis to believe that the use of such force was necessary.

103. By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, excessive force, and unlawful searches of person and property, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution

104. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

**SECOND CAUSE OF ACTION**

105. Plaintiffs repeat the allegations contained in the foregoing paragraphs as though stated fully herein.

106. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within the NYPD generally and the 47th Precinct specifically.

107. Upon information and belief, defendants knew that there was

inadequate supervision within the NYPD on and prior to the date of plaintiffs' arrests, and that NYPD guidelines, as promulgated in the Patrol Guide, and elsewhere, were routinely ignored and violated by NYPD members. Despite their prior notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were in place to reasonably provide that NYPD officers, employees, and their agents, engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers to stop, detain, search and arrest members of the public, including and specifically, the plaintiffs herein.

108. Specifically, the City of New York has paid at least $165,000 to settle civil rights violations committed by defendant Huntley, who has been sued for civil rights violations in the following cases:

- Ryan, et al. v. The City of New York, et al., 5 CV 1564 (RJS) (JCF)
- Jones v. The City of New York, et al., 7 CV 5625 (JSR)
- Ferdinand v. The City of New York, et al., 7 CV 8542 (RMB)
- Fulcher, et al. v. The City of New York, et al., 8 CV 1110 (CPS) (CLP)
- Hall, et al. v. The City of New York, et al., 10 CV 3087 (CLP)
- Turner, et al. v. The City of New York, et al. 11 CV 6175 (JBW) (LB)

109. Defendant Joshua Valdez has been sued at least one time before for civil rights violations. See Okafor v. City of New York, et al., 12 CV 0625 (AJN)

110. Defendants were deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general,

and caused the violation of plaintiffs' rights in particular.

111. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

**THIRD CAUSE OF ACTION**

112. Plaintiffs repeat the allegations contained in the foregoing paragraphs as though stated fully herein.

113. At all times hereinafter mentioned the municipal defendant, the City of New York, its agents, employees and servants, including but not limited to the aforementioned individual defendants, acted under color of the statutes, customs, ordinances and usage of the City and State of New York.

114. That the defendant, City of New York, by its persistent lax supervision of its officers, by its practice of requiring its officers to effect a certain minimum number of arrests, and persistent and arbitrary refusal to discipline its officers and to fully and adequately investigate allegations of abuse, neglect, cruelty, and violation of departmental rules and regulations has demonstrated a pattern and practice of abuse of power and deprivation of civil rights by subjecting persons to unlawful and unjustified detentions and deprivations of legal rights and remedies.

115. Such actions are believed to be comprised of, inter alia, the persistent harassment of individuals, false arrest of said persons, insensitivity, intolerance, physical punishment and abuse and excessive force, failure to investigate claims of abuse and

violations of departmental rules and regulations, failure to discipline officers when necessary, covering up such incidents when possible, and generally creating and fostering an environment in which an attitude of "cover-up" and denial of officer misbehavior, tortious acts, and violations of law are condoned and accepted, all of which is common knowledge to the subject community and residents within the New York City area.

116. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983, and thereby deprived plaintiffs of their right to equal protection under the law and impeded the due course of justice, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States, and the Constitution of the State of New York, and caused plaintiffs to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i. On the First Cause of Action, damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

ii. On the First Cause of Action, punitive damages in a substantial sum of money against the individual defendants in an amount to be determined at trial;

iii. On the Second Cause of Action, damages in a substantial sum of money against the City of New York in an amount to be determined at trial;

iv. On the Third Cause of Action, damages in a substantial sum of money against the City of New York in an amount to be determined at trial;

v. Statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

vi. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
April 21, 2014

REIBMAN & WEINER

By: /s/

Jessica Massimi (JM-2920)
Attorneys for Plaintiffs
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743

**By ECF**
Liza Sohn, ACC
The New York City Law Department
100 Church Street
New York, NY 10007
Attorneys for Defendants
THE CITY OF NEW YORK
SERGEANT EBONY HUNTLEY (TAX 930380)
POLICE OFFICER JOSHUA VALDEZ (TAX 947565)
POLICE OFFICER MICHAEL BEST (TAX 948666)